# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple Inc. host of jacobjuri15@gmail.com and cellphone number 909-969-4278, believed to be used by Jacob JURI ("Target Account") | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  26mj3516 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Northern___ District of ___California___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachement B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. secs. 952, 960, 963 | Importation of Controlled Substances and Conspiracy to Import Controlled Substances |

The application is based on these facts:

See attached Affidavit by HSI SA Adam Herman, which is hereby incorporated by referece.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Adam Herman*
_____
*Applicant's signature*

Adam Herman, Special Agent, HSI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ *(specify reliable electronic means)*.

Date:  June 12, 2026

_____
*Judge's signature*

City and state:  San Diego, California

Honorable Brian J. White, Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Adam Herman, Special Agent, Homeland Security Investigations ("HSI"), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. ("Apple") to disclose to the government records and other information, including the contents of communications, associated with an iCloud account connected to the following Apple ID:

- jacobjuri15@gmail.com and cellphone number 909-969-4278, believed to be used by Jacob JURI ("**Target Account**")

for items which constitute evidence of violations of 21 U.S.C. §§ 952, 960 and 963 (Importation of Controlled Substances and conspiracy to do the same) (the "subject offenses"); as more fully described in Attachment B.

2. For the reasons set forth below, I believe there is probable cause for the requested warrant for the **Target Account**, the contents for which are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at One Apple Park Way, Cupertino, California 95014. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in **Attachment A and B**, which are attached incorporated herein.

3. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers who have personal knowledge of the events and circumstances described herein; my review of documents and reports related to this investigation; and information gained through my training and experience. Because this

1

affidavit is submitted for the limited purpose of establishing probable cause in support of the applications for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## BACKGROUND AND EXPERIENCE

4.   I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December of 2023. I am currently assigned to the HSI office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5.   During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. As an HSI Special Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants.

*Training and Experience Relating to the Use of Cellular Telephones and iCloud*

6.   I am aware that it is common practice for controlled substance traffickers to work in concert utilizing cellular telephones. A common tactic utilized by controlled substance traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of controlled substances in this manner, I am aware that controlled substance traffickers in Mexico frequently communicate with the individual responsible for importing the concealed controlled

2

substances into the United States. These communications can occur before, during and after the controlled substances are imported into the United States. For example, prior to the importation, controlled substance traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the controlled substance importation. When the importation is underway, controlled substance traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the controlled substances, provide instructions and warn accomplices about law enforcement activity. When the controlled substances have been imported into the United States, controlled substance traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the controlled substances to a destination within the United States

*Scope of Search*

7.      Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substance trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Additionally, this same information is generally backed-up by Apple and maintained in the cloud. Specifically, searches of cellular telephones and back-up data stored in Apple's Cloud, such as in the **Target Account**, of individuals involved in the importation of controlled substances may yield evidence:

//

3

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and telephone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Account**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above

8.    The facts and conclusions set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, my review of documents and records related to this investigation, communications with others who have personal knowledge of the events, details, and circumstances described herein, and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant,

4

it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates and times are approximate.

## JURISDICTION

9.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.     On March 22, 2026, at approximately 12:49 PM, Jacob Ross JURI, ("JURI"), a United States citizen, applied for entry into the United States from Mexico through the Otay Mesa POE in vehicle lane #11. JURI was the driver, sole occupant, and registered owner of a 2015 Jeep Renegade ("the vehicle") bearing California license plates.

11.     A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from JURI. JURI stated he was crossing the border to go to San Diego, California. The officer received a computer-generated alert on the vehicle. The CBPO asked JURI whether anyone had asked him to bring anything into the U.S., whether anyone had asked him to take anything back to Mexico, and whether the vehicle had been out of his possession or control in the past three days. JURI answered "no" to all three questions. The vehicle was referred for further inspection.

12.     A CBPO operating the Z-Portal X-Ray machine detected anomalies in the roof of the vehicle. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the driver-side roof of the vehicle

13.     Further inspection of the vehicle resulted in the discovery of 24 packages concealed in a non-factory compartment in the roof of the vehicle, with a total approximate

5

weight of 27.10 kgs (59.75 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

14. JURI was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

15. A CBPO found and seized JURI's Apple iPhone 16 on the center consol of the Vehicle. On March 23, 2026, the Honorable Daniel E. Butcher of the United States Southern District Court signed a search warrant under case number 26MJ1609 authorizing the examination of JURI's Apple iPhone 16. As of the date of this warrant, the HSI San Diego Computer Forensics Group has not completed any extraction of the phone.

16. Through law enforcement and open-source database checks, law enforcement identified the **Target Account:** JURI's email address and Apple ID was confirmed as jacobjuri15@gmail.com, and is linked to the cellphone number (909-969-4278) associated with JURI's Apple iPhone 16.

17. Based upon my knowledge of the investigation and my training and experience, I believe that the **Target Account** was being used to coordinate the importation and subsequent distribution of controlled substances within the United States. Unless disabled by a sophisticated user, iCloud accounts are automatically created and information automatically backed up. If the user of the account is using an Apple device such as an iPhone, device information will be automatically backed up to their iCloud account.

18. Subscriber and/or user information, including: all electronic mail, files, cloud storage, location information, search history, images, text messages, voicemail, histories, buddy or friend lists, contacts, iCloud Drives, iCloud files, iCloud Backup and Restore, photos, notes, videos, calendars, messages profiles, methods of payment, detailed billing records, access logs, and transactional data will lead to the identification

6

of evidence of the drug trafficking event. I further believe that evidence of drug trafficking (such as iMessages, text messages, and other messenger communications, photos, videos, locations, and contacts) may be stored in the **Target Account**. In my training and experience, narcotics traffickers may be involved in the planning and coordination of drug importation events in the days and weeks prior to such an event. Given the importation of narcotics on March 22, 2026, I am requesting account data for the **Target Account** for the period between **February 22, 2026, up to and including March 22, 2026**.

19. Additionally, it is believed that the records are still available to Apple as a request to preserve was made under 18 U.S.C. § 2703(f) on April 13, 2026.

### **INFORMATION REGARDING APPLE ID AND iCLOUD**

20. Apple is a United States company that produces and sells a variety of computer devices, software, and services to the public, including the iPhone, iPad, iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system,.

21. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

c.      iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via iCloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.      App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices,

8

or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

22.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address [often ending in @iCloud.com, @me.com, or @mac.com] or an email address associated with a third-party email provider [such as Gmail, Yahoo, or Hotmail]. The Apple ID can be used to access most Apple services [including iCloud, iMessage, and FaceTime] only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

23.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the

9

Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

24.    Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

25.    Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

10

26.    Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

27.    In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

28.    For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are

11

often created and used in furtherance of criminal activity, including to communicate and facilitate the subject offenses.

29.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

30.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31.    Further, I know when a user has an Apple Watch with cellular and an activated cellular plan, the user can stay connected even when away from their iPhone. For all other models of Apple Watch, there are still things the user can do even when the user is away from their iPhone and not connected to Wi-Fi. When the iPhone is off or out of range, the Apple Watch can use a Wi-Fi network to send and receive data. The watch can also connect to a cellular network if it's a cellular model. If a user set up an Apple

12

Watch for a family member, they can use a cellular or Wi-Fi connection with their watch. A Wi-Fi or cellular connection lets the Apple Watch do the following things, even if your iPhone isn't with you.[1]

32.    Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

33.    Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

### *Temporal Scope of the Requested Search*

34.    I know, based on my training and experience, including my experience within this case, that controlled substance trafficking often involves continuing communication that transpires over the days, weeks, and months prior to a distribution event. That activity often continues throughout the life of the overall conspiracy, which is an ongoing series of events, that can often last for months or year.

35.    Finally, given the facts of this affidavit, my understanding of how Apple accounts can be used in furtherance of the offenses as described herein, and my awareness

---

[1] The referenced information can be found on website: https://support.apple.com/enus/HT205547.

13

that Apple accounts can retain information for extended periods of time, I submit that this Court should authorize a search of the **Target Account** for the period starting on **February 22, 2026,** and **March 22, 2026**.

### ITEMS TO BE SEIZED

36.    Investigators know that individuals working with criminal organizations often use multiple communication platforms in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Indeed, based on training and experience, investigators are aware that, in addition to telephone and text messaging services (i.e., MMS and SMS), other communication platforms, like iMessage and WhatsApp, are also often used by drug traffickers to engage in their illegal activity. These communication services, like telephone and text messaging services, can be used to coordinate payments and meetings, conduct negotiations and other matters relating to the criminal scheme, and to send location data, photos, audio files, and/or videos, concerning the criminal activity, all of which are available from iCloud as outlined above. Based on my training and experience, voicemails, audio files, photos, videos, and documents also are often created and used in furtherance of criminal activity. Thus, stored communications and files connected to the **Target Account** may provide direct evidence of the offenses under investigation. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. Additionally, based on training and experience, investigators are aware that a download extraction, like that performed here, may not contain the same data that is saved to an iCloud Account. This is because forensic extractions of telephones are limited and may not be fully compatible with the telephone under question in order to

seize all of the information that appears on that telephone. Alternatively, items deleted from the telephone may still appear in the iCloud Account.

37.    Based on training and experience, investigators are aware that evidence of who was using the **Target Account** and from where, and evidence related to criminal activity of the kind at issue here, may be found in the files and records described in Attachment B and available from Apple. For example, stored files on iCloud or iMessage may provide relevant insight into an account owner's state of mind as it relates to the offenses under investigation, such as the owner's motive and intent to commit a crime (*e.g.*, communications indicating a plan to commit a crime) or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement). Communications, notes, contacts, photographs, internet searches, location information and other information that Apple can produce related to the **Target Account** also can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation, including addresses and/or vehicles used by the subjects of the investigation. And, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation, such as services used to communicate with co-conspirators.  Therefore, Apple's servers are likely to contain stored electronic communications and information constituting evidence of the crimes under investigation.

38.    Apple's servers also are likely to contain "user attribution" evidence. Such evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, device information, the data associated with the foregoing (such as location, date, and time information), photographs, videos, and audio files may be evidence of who used or controlled the **Target Account** at a relevant time. As an example, because every device has unique hardware and software

15

identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices – and thereby which user(s) – likely accessed the **Target Account**. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to crimes under investigation.

## PROCEDURES FOR ELECTRONICALLY-STORED INFORMATION

39.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Apple are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Apple for the relevant account and then to analyze the contents of that account on the premises of Apple. The impact on Apple's business would be severe.

40.     Therefore, I request authority to seize all content from **Target Account**, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with Apple's business activities, to protect the rights of the subject(s) of the investigation, and to effectively pursue this investigation, agents seek authorization to allow Apple to make digital copies of the entire contents of the accounts subject to seizure, as described in Section II of Attachment B. The copy will be provided to me or to an authorized federal agent. The copy will be forensically imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Section III of Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

41.     Analyzing the data to be provided by Apple may require special technical skills, equipment, and software. It may also be time-consuming. Searching by keywords,

16

for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang or typographical errors. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common applications do not store data as searchable text. The data may be saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

42.    Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by Apple, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination of Apple's records will complete the analysis within **ninety (90) days** of receipt of the data from the service provider, absent further application to this court.

43.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic communications that identify any users of the **Target Account** and any electronic communications sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

44.    Prior attempts to obtain this evidence are limited to JURI's telephone download, as outlined above, associated with the **Target Account**.

## CONCLUSION

45.    Based on the forgoing, there is probable cause to believe that the **Target Account**, as identified in Attachment A, will yield evidence of violations of Title 21, United States Code, Sections 952, 960, and 963, as identified in Attachment B, and I request that the Court issue the proposed search warrant. Based on the above statement or probable cause, I am requesting account data for the **Target Account** for the period between **February 22, 2026,** and **March 22, 2026**.

46.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_Adam Herman_

_____
Special Agent Adam Herman
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 12th day of June 2026.

_____
HONORABLE BRIAN J. WHITE
UNITED STATES MAGISTRATE

18

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Apple ID, jacobjuri15@gmail.com and cellphone number 909-969-4278, believed to be used by Jacob JURI ("**Target Account**"), that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Service of Warrant**

The officer executing the warrant shall permit Apple Inc., as the custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.    Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media

20

Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ( "MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.       The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.       The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.       The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote,

21

and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.    All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.    All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps to include date and time stamps;

h.    All records pertaining to the types of service used;

i.    All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**III.    Information to be Seized by the Government**

All information described above in Section II that constitutes evidence of violations of 21 U.S.C. §§ 952, 960 and 963 (Importation of Controlled Substances and conspiracy to do the same) (the "subject offenses"); limited to the period of **February 22, 2026,** up to and including **March 22, 2026**, and to the seizure of evidence:

> g.  tending to indicate efforts to import controlled substances from Mexico into the United States;
>
> h.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and telephone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;
>
> i.  tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;
>
> j.  tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;
>
> k.  tending to identify the user of, or persons with control over or access to, the **Target Account**; and/or
>
> l.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

All of the above constituting evidence of a violation of the subject offenses.

# UNITED STATES DISTRICT COURT

for the
SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Apple Inc.
Host of jacobjuri15@gmail.com and
cellphone number 909-969-4278, believed
to be used by Jacob JURI
("Target Account")

)
)
)
)
)
)
)
)
)

Case No.   26mj3516

# NOT FOR PUBLIC VIEW

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the  Northern    District of  California
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   June 26, 2026
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Brian J. White                    .
*(name)*

☐ The electronic communication service provider to whom this warrant is directed shall not notify any other person of the existence of this warrant until _____, absent further order of the Court, as the Court finds reason to believe that such notification will result in an adverse consequence as provided at 18 U.S.C. § 2705(b).

Date and time issued:     June 12, 2026              _____
*Judge's signature*

City and state:      San Diego, California          Honorable Brian J. White, United States Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: 26mj3516 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing Officer's Signature*

_____
*Printed name and title*

Print Form

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Apple ID, jacobjuri15@gmail.com and cellphone number 909-969-4278, believed to be used by Jacob JURI ("**Target Account**"), that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

1

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Service of Warrant**

The officer executing the warrant shall permit Apple Inc., as the custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.      Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media

2

Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ( "MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.    The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.    The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote,

3

and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.    All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.    All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps to include date and time stamps;

h.    All records pertaining to the types of service used;

i.    All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

4

**III.    Information to be Seized by the Government**

All information described above in Section II that constitutes evidence of violations of 21 U.S.C. §§ 952, 960 and 963 (Importation of Controlled Substances and conspiracy to do the same) (the "subject offenses"); limited to the period of **February 22, 2026,** up to and including **March 22, 2026**, and to the seizure of evidence:

a.  tending to indicate efforts to import controlled substances from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and telephone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Target Account**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

All of the above constituting evidence of a violation of the subject offenses.